# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANO SARACINAJ d/b/a DANO'S PUB,** | : <br> : <br> : **CIVIL ACTION NO. 3:21-CV-793** <br> : <br> : **(JUDGE MARIANI)** <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Plaintiff, | |
| v. | |
| **NATIONWIDE INSURANCE CO. d/b/a SCOTTSDALE INSURANCE CO., LESLIE NESTER, and ROBERT TUSCANO,** | |
| Defendants. | |

## MEMORANDUM OPINION
### I. INTRODUCTION

Plaintiff's Motion to Remand (Doc. 23) is pending before the Court. With the motion, Plaintiff requests that the Court remand the above-captioned matter to the Court of Common Pleas of Luzerne County, Pennsylvania. (*Id.* at 3.) Defendant Scottsdale Insurance Co. ("Scottsdale") removed the action to this Court on May 3, 2021, pursuant to 28 U.S.C. §§ 1332 and 1446(b) based on the allegedly fraudulent joinder of Defendants Leslie Nester and Robert Tuscano.[1] (Notice of Removal ¶¶ 7, 18-19 (Doc. 1 at 2, 7).[2]) Specifically, Defendant Scottsdale avers that "Defendant Nester and Defendant Tuscano

---

[1] In the Notice of Removal, Defendant Scottsdale states that it was "incorrectly identified as 'Nationwide Insurance Co. d/b/a/ Scottsdale Insurance Co.'" (Doc. 1 at 3.)

[2] Because of the number of separate documents contained in Document 1, most of which have separate pagination, the Court refers to the ECF assigned page number(s) rather that the individual document page number(s) when identifying page numbers in Document 1.

have been fraudulently joined such that their citizenship should be disregarded for the purpose of determining diversity. Consequently, complete diversity of citizenship exists between the only two properly joined parties, plaintiff and Scottsdale." (*Id.* ¶¶ 18-19 (Doc. 1 at 7).) In the Motion to Remand, Plaintiff maintains that the claim of fraudulent joinder is unsupported and he has asserted valid claims against Defendants Nester and Tuscano. (Doc. 23 ¶¶ 7-9.) Plaintiff concludes that, because Defendants have not met their burden of showing fraudulent joinder, the case should be remanded based on a lack of diversity jurisdiction. (*Id.* ¶ 10.) For the reasons that follow, the Court will grant Plaintiff's Motion.

## II. PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

Relevant to the diversity issue presented with the pending motion, the Complaint states that Plaintiff Dano's Pub is a commercial establishment in Drums, Pennsylvania, Plaintiff Saracinaj owns and operates Dano's Pub, Defendant Scottsdale is a corporation and insurance company conducting business in Pennsylvania with a corporate office in Ohio, Defendant Tuscano d/b/a W.N. Tuscano Agency Inc. is an insurance brokerage agency in Greensburg, Pennsylvania, and Leslie Nester is an insurance agent with a principal address in Minersville, Pennsylvania. (Compl. ¶¶ 1-2, 4-5 (Doc. 1 at 25-26).)

According to the Complaint, at all relevant times Plaintiff was insured by a policy underwritten by Defendant Scottsdale, and he procured the policy after consultation with Defendant Nester who is an insurance agent for Defendant Tuscano's brokerage. (*Id.* ¶¶ 3-7, 11 (Doc. 1 27, 27).) Plaintiff asserts that he sought the guidance of Defendant Nester

2

regarding the correct insurance coverage for his commercial establishment, including review of his past policy to make sure that his business was properly covered. (*Id.* ¶ 7 (Doc. 1 at 26).) In a discussion which followed Defendant Nester's inspection of the premises, Plaintiff avers that he advised Defendant Nester that he "wanted full 100% coverage" and he was assured that Dano's Pub "would be 100% covered by sufficient insurance for any loss of income as well as property damage." (*Id.* ¶¶ 8-10 (Doc. 1 at 26.) Plaintiff further avers that, "as a result of the representation and assurances of Defendant Leslie Nester, [he] entered into a comprehensive insurance policy" with Defendant Scottsdale. (*Id.* ¶11 (Doc. 1 at 27).)

After the business was forced to close in March 2020 due to the Pennsylvania Governor's shutdown order, Plaintiff filed a claim for business loss of income in April 2020. (*Id.* ¶¶ 12, 15 (Doc. 1 at 27).) On July 15, 2020, Plaintiff received notification that the claim would be denied because Plaintiff's property suffered no physical damage and the loss was caused by a virus or bacteria. (*Id.* ¶ 18 (Doc. 1 at 27).)

Sometime after Plaintiff filed the business income-loss claim, the walk-in cooler malfunctioned which resulted in the contents of the cooler being destroyed. (*Id.* ¶ 16 (Doc. 1 at 27).) Plaintiff also states that "in or about May 20, 2020, Plaintiff sustained a property loss and thereafter filed a claim" with Defendant Scottsdale which was denied on August 13,

3

2020, because the policy excluded coverage for damage due to an electrical surge.[3]  (*Id.* ¶¶ 17, 19 (Doc. 1 at 27).)

Plaintiff contends that Defendant Nester "clearly represented Plaintiff had 100% coverage for these losses without any exclusions." (*Id.* ¶ 20 (Doc. 1 at 27).) He further contends that he would not have paid for the business insurance policy "but for the clear representations of Defendant Nester." (*Id.* ¶ 21 (Doc. 1 at 28).)

These events gave rise to the filing of Plaintiff's April 1, 2021, Complaint which sets out a breach of contract claim against Defendant Scottsdale based on loss of business income (Count I), a breach of contract claim against Defendant Scottsdale based on loss of property damage (Count II), a negligence claim against Defendants Nester and Tuscano based on allegedly incorrect advice they provided to Plaintiff (Count III), and a bad faith claim against Defendant Scottsdale (Count IV). (*Id.* ¶¶ 24-43 (Doc. 1 at 28-32).)

In the claim for negligence which is relevant to the pending motion, Plaintiff states that Defendant Nester personally inspected Dano's Pub and made observations on Plaintiff's insurance needs. (*Id.* ¶ 31 (Doc. 1 at 29).) Plaintiff further states that he and Defendant Nester "discussed the needs of the insured to make certain that he was covered for loss of income in any circumstances and properly insured for property damage." (*Id.*) Plaintiff maintains that when he "inquired of Defendant Nester whether it was advisable to

---

[3] In the Complaint, it is not clear whether the cooler malfunction was the basis for the property loss claim.

4

obtain any other coverage for the premises to protect against loss of income and property damage, Nester informed Plaintiff that he was 100% covered by the insurance policy for such loss." (*Id.* ¶ 32 (Doc. 1 at 29).) Plaintiff concludes that the incorrect information provided by Defendants Nester and Tuscano and his reliance on the incorrect information have caused damages for which he seeks compensation. (*Id.* ¶¶ 35-38 (Doc. 1 at 30).)

As noted above, on May 3, 2021, Defendant Scottsdale removed this action to federal court pursuant to 28 U.S.C. §§ 1332 and 1446(b) based on fraudulent joinder. Plaintiff thereafter filed the Motion for Remand (Doc. 23) on September 10, 2021, pursuant to 28 U.S.C. § 1446(c). (Doc. 23.) Plaintiff's supporting brief (Doc. 27) was filed on September 24, 2021. All Defendants timely filed briefs in opposition. (Docs. 29-31.)

### III. ANALYSIS

With the Motion to Remand, Plaintiff maintains that Defendants Nester and Tuscano were not fraudulently joined and Defendants "simply cannot demonstrate that Plaintiff has failed to assert viable claims against these Defendants." (Doc. 27 at 3.) Defendants respond that Plaintiff's motion should be denied because there is no reasonable basis in fact or law for the negligence claims against Defendants Nester and Tuscano. (Doc. 29 at 6; Doc. 30 at 5; Doc. 31 at 9.)

A removing party bears the burden of demonstrating "that at all stages of the litigation the case is properly before the federal court." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009). "Removal statutes are to be strictly construed, with all doubts to be resolved

5

in favor of remand." *Id.* (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)).

Generally, a plaintiff has "the option of naming those parties whom [he or she] choose[s] to sue, subject only to the rules of joinder of necessary parties." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 110 (3d Cir. 1990).

> While the plaintiff['s] decision in this regard may have repercussions for purposes of diversity jurisdiction, there is no reason for a court to interfere with this inevitable consequence of a plaintiff's election unless the plaintiff had impermissibly manufactured diversity or used an unacceptable device to defeat diversity.

*Id.* Thus, although a court should be cautious not to interfere with a plaintiff's election, "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right," *Brown*, 575 F.3d at 326 (quoting *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907)). As the Supreme Court established long ago, the "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (citing *Wecker v. National Enameling and Stamping Co.*, 204 U.S. at 185, 186). "If in such a case a resident defendant is joined, the joinder, although fair upon its face, may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal." *Id.* (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U. S. 146, 152 (1914)). In sum, "the diverse defendant may still remove the action if it can establish that the non-diverse defendants were fraudulently named or joined solely to defeat diversity

6

jurisdiction." *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (citations omitted). But defendants alleging fraudulent joinder bear a "heavy burden of persuasion." *Batoff*, 977 F.2d at 851.

*Batoff* reviewed the standards to be applied in a fraudulent joinder analysis:

> Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment. But, if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court. . . .
>
> In evaluating the alleged fraud, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed. In so ruling, the district court must assume as true all factual allegations of the complaint. It also must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff.

*Batoff*, 977 F.2d at 851-52 (internal quotations and citations omitted).

*Briscoe* further explained that, in *Batoff*, the Circuit Court

> rejected the district court's decision to conduct a merits determination in the context of a fraudulent joinder inquiry . . . because "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted," the district court had "erred in converting its jurisdictional inquiry into a motion to dismiss." [*Batoff*, 977 F.2d] at 852. Unless the claims against the non-diverse defendant could be deemed "wholly insubstantial and frivolous," which they were not, the joinder could not be considered fraudulent.

*Briscoe*, 448 F.3d at 217-18.

In reviewing *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985), a case where the plaintiffs filed an action in state court to recover under their insurance policy

7

for the loss of their home and named the insurer and ten "John Doe" employees of the insurer who were non-diverse from the plaintiffs, *Briscoe* analyzed the Circuit Court's decision that the district court's refusal to remand was error:

> We explained that the presence of the Doe defendants could not be said to represent an attempt to defeat diversity jurisdiction. We stated that a court must first "ask whether, on the face of the complaint, there are sufficient allegations concerning [the non-diverse defendants'] identity and conduct to justify consideration of their citizenship," and, second, we must "look beyond the face of the complaint for indicia of fraudulent joinder." *Abels,* 770 F.2d at 29. Because the plaintiffs' complaint identified the Doe defendants with specificity and raised express claims against them, we found the allegations sufficient to defeat diversity jurisdiction. We then "look[ed] beyond" the allegations and found that, at least subjectively, the "[p]laintiffs' conduct . . . [was] consistent with an intention to actually proceed against at least some Doe defendants." *Id.* at 32. We were "somewhat more troubled" when looking at "the objective criteria that there be some reasonable basis in fact and some colorable legal ground supporting a claim against the Doe defendants." *Id.* Nevertheless, we determined that "enough recent authority" supported the plaintiffs' claim that a cause of action existed under state law, thereby precluding a finding that there was no colorable legal basis. *Id.* "To inquire any further into the legal merits would be inappropriate in [a] preliminary jurisdictional determination." *Id.* at 32–33.

*Briscoe,* 448 F.3d at 218–19.

Further, a district court's evaluation of the alleged fraud must "focus on the plaintiff's complaint at the time the petition for removal was filed." *Batoff,* 977 F.2d at 852; *Briscoe,* 448 F.3d at 217. "[T]he district court must assume as true all factual allegations of the complaint." *Id.* The court "must also resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Briscoe,* 448 F.3d at 217.

The Court will first consider whether Plaintiff's Complaint on its face contains sufficient allegations concerning the non-diverse Defendants' identity and conduct to justify consideration of their citizenship. *Abels,* 770 F.2d at 29; *Briscoe,* 448 F.3d at 218. As in *Briscoe,* Plaintiff's Complaint identifies the non-diverse Defendants, Leslie Nester and Robert Tuscano, with specificity and asserts a claim of negligence against them which contains specific allegations. (Compl. ¶¶ 4-6, 30-38 (Doc. 1 at 26, 29-30).) As these circumstances on their face are sufficient to defeat diversity jurisdiction, the Court next looks beyond the face of the Complaint "for indicia of fraudulent joinder." *Briscoe,* 448 F.3d at 219 (citing *Abels,* 770 F.2d at 32).

Here, the Court finds no indication that Plaintiff has "no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Batoff,* 977 F.2d at 851. In other words, Plaintiff's conduct has been consistent with an intention to proceed against the non-diverse Defendants. *Briscoe,* 448 F.3d at 219; *Abels* 770 F.2d at 32.

The final question is whether there is some reasonable basis in fact and some colorable legal ground supporting a claim against Defendants Nester or Tuscano. *Id.* This is the question of whether a cause of action against these Defendants exists under state law. *Id.* As stated in *Batoff,* "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." 977 F.2d at 851. Because Plaintiff asserts a claim of negligence against Defendants Nester and

Tuscano based on allegedly inadequate representations and inaccurate assurances (Compl. ¶¶ 30-38 (Doc. 1 at 29-30)), the Court must determine whether Pennsylvania law possibly recognizes a cause of action for negligence against a plaintiff's insurance agent or insurance broker in such circumstances.[4]

In *Wisniski v. Brown & Brown Ins. Co. of PA*, 906 A.2d 571 (Pa. Super. Ct. 2006), a case where insureds raised a negligence claim against an insurance agency, agents, and property insurer to recover for failure to recommend flood insurance, the Superior Court of Pennsylvania considered whether an insurance agency, in its capacity as an insurance broker, owed a duty to insureds to inspect their property before advising them about their insurance needs. *Wisniski* first set out relevant general principles:

> "It is axiomatic that in order to maintain a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." *Phillips v. Cricket Lighters*, 576 Pa. 644, 841 A.2d 1000, 1008 (2003) (citation omitted).
>
> "The initial element in any negligence cause of action is the first: that the defendant owes a duty of care to the plaintiff. The existence of a duty is a question of law for the court to decide. In negligence cases, a duty consists of one party's obligation to conform to a particular standard of care for the protection of another. This concept is rooted in public policy." *R.W. v. Manzek*, 585 Pa. 335, 888 A.2d 740, 746 (2005) (citations omitted).

---

[4] In his supporting brief, Plaintiff states that he "has alleged sufficient facts to establish that a fiduciary and/or confidential relationship existed." (Doc. 27 at 5.) However, his Complaint does not state a claim for breach of fiduciary duty or specify the nature of his negligence claim against Nester and Tuscano. Because the allegedly fraudulent joinder analysis must "focus on the plaintiff's complaint at the time the petition for removal was filed," *Batoff*, 977 F.2d at 852; *Briscoe*, 448 F.3d at 217, the Court focuses on the Complaint itself and the general claim of negligence in determining whether remand is appropriate

10

*Wisniski*, 906 A.2d at 575-76. Concerning the legal concept of duty, *Wisniski* set out the Pennsylvania Supreme Court's general parameters of the concept and the relevant test for determining whether a duty exists:

> "[T]he legal concept of duty of care is necessarily rooted in often amorphous public policy considerations, which may include our perception of history, morals, justice and society. The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution."

906 A.2d at 577 (quoting *Althaus v. Cohen*, 756 A.2d 1166 (Pa. 2000)).

Although the concept of whether a duty exists in a specific case is necessarily a fact-intensive inquiry, several courts have identified a legal duty owed to an insured by an insurance agent or broker under Pennsylvania law in considering a claim of negligence brought by an insured.

> In Pennsylvania, "[t]he duty of care owed to an insurance purchaser by an insurance agent on a claim of simple negligence is to obtain the coverage that a reasonably prudent professional insurance agent would have obtained under the circumstances." *Amendolia v. Rothman*, No. 02-8065, 2003 U.S. Dist. LEXIS 22719, at *18 (E.D. Pa. Dec. 8, 2003). An insurance broker is liable for any loss stemming from his negligence "unless the customer is also guilty of failure to exercise care of a reasonably prudent businessman for the protection of his own property and business which contributes to the happening of such loss." *Consol. Sun Ray, Inc. v. Lea*, 401 F.2d 650 (3d Cir.1968) (quotation omitted), *cert. denied*, 393 U.S. 1050, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969).

*Nw. Mut. Life Ins. Co. v. Babayan*, No. CIV. A. 03-1622, 2004 WL 1902516, at *20 (E.D. Pa. Aug. 25, 2004), *aff'd*, 430 F.3d 121 (3d Cir. 2005).

Similarly, in *Foremost Ins. Co., Grand Rapids, Michigan v. Himmel*, Civ. A. No. 09-CV-2575, 2010 WL 11549852 (M.D. Pa. July 8, 2010) (Jones, J.), this Court discussed the existence under Pennsylvania law of a duty on the part of an insurance agent:

> With regard to simple negligence, "[t]he duty owed by an insurance agent to an insured is to obtain the coverage that a reasonable and prudent professional insurance agent would have obtained under the circumstances." *Fiorentino v. Travelers Ins. Co.*, 448 F. Supp. 1364, 1369-70 (E.D. Pa. 1978) (citing *Rempel v. Nationwide Life Ins. Co., Inc.*, 227 Pa. Super. 87, 323 A.2d 193 (1974), *aff'd*, 471 Pa. 404, 370 A.2d 366 (1977)). *See also Amendolia v. Rothman*, 2003 U.S. Dist. LEXIS 22719, at *18 (E.D. Pa. Dec. 8, 2003) (same); *Hatch v. Prudential Fin., Inc.*, 2006 U.S. Dist. LEXIS 85371, at *16 (M.D. Pa. Nov. 16, 2006) ("Under Pennsylvania law, an insurance agent or broker owes his prospective insured or annuitant a duty of care to obtain the insurance coverage or annuity that a reasonably prudent person would have obtained given the particular circumstances.").

*Himmel*, 2010 WL 11549852, at *3.[5]

Here, Defendant Nester inspected the premises to be insured and allegedly made recommendations and gave assurances regarding coverage. Whether Nester and Tuscano satisfied their duty "to obtain the coverage that a reasonable and prudent professional insurance agent would have obtained under the circumstances," *Fiorentino*, 448 F. Supp. at

---

[5] In *Yenchi v. Ameriprise Financial, Inc.*, 161 A.3d 811 (Pa. 2017), the Pennsylvania Supreme Court held that a fiduciary duty did not arise in a consumer transaction for the purchase of a whole life insurance policy based on the advice of a financial advisor. The Court noted that the plaintiffs' complaint had also contained a count for both professional negligence ("e.g., that Appellants breached a duty to exercise reasonable care, skill and diligence in advising and recommending an insurance program appropriate for the needs of the Yenchis"), and negligent misrepresentation ("e.g., that Appellants failed to disclose full, correct and material information regarding the products being offered"). 161 A.3d at 816 n.3. The Court further noted that the plaintiffs had pursued only a claim for negligent misrepresentation for which summary judgment had been sought and denied. *Id.* This scenario indicates that claims for negligence against an insurance advisor regarding policy advice, recommendations, and disclosures of material information are not necessarily frivolous.

1369-70 (citing *Rempel* 323 A.2d 193), is a fact intensive inquiry not appropriately undertaken in this jurisdictional analysis. Rather, it is sufficient for present purposes to conclude that the claims against Defendants Nester and Tuscano cannot be deemed "wholly insubstantial and frivolous" such that joinder can be considered fraudulent, *Briscoe*, 448 F.3d at 218, because Pennsylvania law recognizes that insurance agents and brokers may have a duty to the insured which could possibly support a negligence claim here,

As previously noted, the Court's analysis is based on the allegations contained in Plaintiff's Complaint.[6] *See supra* p. 10 n.4. While Defendants' analysis of whether Defendants Nester and Tuscano were fraudulently joined delves into the potential merits of Plaintiff's negligence claim against the non-diverse Defendants (*see* Docs. 29-31), the Court declines to do so based on the Third Circuit's guidance on the limited nature of the jurisdictional inquiry. *See, e.g., Briscoe*, 448 F.3d at 217-18. It may be that Plaintiff's negligence claim is ultimately dismissed for failure to state a claim upon which relief may be granted, but that standard is distinct form the "wholly insubstantial and frivolous" standard which is used to determine whether joinder is fraudulent. *Id.*

---

[6] Thus, the Court does not analyze Plaintiff's specific assertion in his supporting brief that he has alleged sufficient facts to establish a fiduciary duty on the part of the non-diverse Defendants. (*See* Doc. 27 at 5.) Similarly, the Court does not analyze Plaintiff's averment that a confidential relationship existed between him and Nester which can support a negligence claim (*see id.*) and Defendants' argument to the contrary (*see, e.g.*, Doc. 29 at 14-16). However, based on the Pennsylvania Supreme Court's guidance that the question of whether a confidential relationship exists between parties "is intensely fact-specific," *Porreco v. Porreco*, 811 A.2d 566 (Pa. 2002), the Court notes only that such a basis for liability is not foreclosed by the Complaint.

As the removing party alleging fraudulent joinder, Defendant Scottsdale bears a "heavy burden of persuasion" in this matter. *Batoff*, 977 F.2d at 851. The Court finds no basis to conclude that Defendant Scottsdale has met this burden in that it has not established that Defendants Nester and Tuscano were "fraudulently named or joined solely to defeat diversity jurisdiction." *Briscoe*, 448 F.3d at 216. It has not shown that there is not "even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants." *Batoff*, 977 F.2d at 851. Therefore, Plaintiff's Motion to Remand (Doc. 23) is appropriately granted and this matter will be remanded to the Court of Common Pleas of Luzerne County, Pennsylvania.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Remand (Doc. 23) will be granted. A separate Order follows.

Robert D. Mariani
United States District Judge